STATE OF NORTH CAROLINA v. TONY RAY McGIRT

No. COA95-701

(Filed 16 April 1996)

Searches and Seizures § 82 (NCI4th)— lawfully detained vehi-
cle—driver ordered to exit—no unreasonable search and
seizure—reasonable grounds to believe driver armed and
dangerous

The Fourth Amendment's proscription of unreasonable
searches and seizures was not violated when the police ordered
defendant, the driver of a lawfully detained vehicle, to exit the
vehicle; furthermore, the evidence could support a conclusion
that the officer had reasonable grounds to believe the defendant
might be armed and dangerous so that a "pat-down" of defendant
for weapons was lawful, even though he was cooperative and pre-
sented no obvious signs of carrying a weapon, since defendant
was a convicted felon, a fact known to the arresting officer;
defendant was under investigation by the arresting officer for
drug trafficking; and it was the officer's experience that cocaine
traffickers "normally carry weapons."

Am Jur 2d, Searches and Seizures §§ 51, 78.

Law enforcement officer's authority, under Federal
Constitution's Fourth Amendment, to stop and briefly
detain, and to conduct limited protective search of or
"frisk," for investigative purposes, person suspected of
criminal activity—Supreme Court cases. 104 L. Ed. 2d 1046.

Judge SMITH dissenting.

Appeal by defendant from judgment entered 20 April 1995 in
Scotland County Superior Court by Judge B. Craig Ellis. Heard in the
Court of Appeals 21 February 1996.

STATE v. McGIRT

[122 N.C. App. 237 (1996)]

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth Rouse Mosley, for the State.*

*Doran J. Berry and Ronnie M. Mitchell for defendant-appellant.*

GREENE, Judge.

Tony Ray McGirt (defendant) appeals from the trial court's order, denying his motion to suppress a gun found during a search of his person. After the trial court denied defendant's motion, defendant pled guilty to possession of a firearm by a felon, in violation of N.C. Gen. Stat. § 14-415.1, and carrying a concealed weapon, in violation of N.C. Gen. Stat. § 14-269.

It is undisputed that on 27 October 1994 at about 9:30 a.m., Deputy Tommy Butler (Butler) of the Scotland County Sheriff's Department stopped defendant, who was driving a vehicle on a public street, for failure to wear his seat belt. Butler testified at the suppression hearing that he "had been looking for [defendant's] vehicle the previous night" and was "conducting an investigation on [defendant] for cocaine trafficking." Butler knew, at the time, that defendant had prior felony drug convictions and in his experience knew that "cocaine traffickers normally carry weapons."

The trial court found that after stopping defendant for the seat belt violation, Butler asked defendant for his license, which defendant produced, and asked defendant to exit the vehicle. Defendant complied with Butler's request and exited the vehicle, at which point Butler asked defendant if he had anything on him. Defendant answered, "No," and raised his hands. Butler then frisked defendant and felt a hard object, which Butler believed to be a gun. Butler asked defendant to identify the object, to which defendant replied that it was a pistol and handed the .22 caliber pistol to Butler. At that point, Butler arrested defendant for carrying a concealed weapon and possession of a weapon by a felon.

The trial court then concluded as a matter of law that Butler had probable cause to stop defendant's vehicle, because of defendant's seat belt violation. The trial court further concluded that Butler possessed "reasonable grounds to ask the defendant to exit his car and had [a] reasonable articulable suspicion which gave him the right to pat down the defendant for weapons." Finally, the trial court concluded that the search did not violate defendant's statutory or federal or state constitutional rights. Accordingly, defendant's motion to suppress was denied.

The issues are (I) whether Butler had the authority to ask defendant to exit his car; and if so, (II) whether Butler had a right to "pat-down" defendant for weapons.

We first note that the stop of defendant's vehicle for a seat belt violation may have been pretextual and thus unconstitutional. *State v. Morocco*, 99 N.C. App. 421, 427, 393 S.E.2d 545, 548 (1990) (police may not make stops "merely on the pretext of a minor traffic violation"). The nature of the stop, however, has not been raised by the defendant as a basis to support his motion to suppress.

I

Assuming that the stop itself was lawful, did the officer have the authority to ask the defendant to exit the automobile? This requires a weighing of the interest of the State in the personal safety of the officer and the interest of the defendant against an intrusion into his personal liberty. *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 54 L. Ed. 2d 331, 336-37 (1977). Because face-to-face confrontations outside the automobile "reduce[] the likelihood that the officer will be the victim of an assault" and because exiting the automobile is not a "serious intrusion upon the sanctity of the person," the Fourth Amendment's proscription of unreasonable searches and seizures is not violated when the police order the driver of a lawfully detained vehicle to exit the vehicle. *Id.*

II

A routine traffic stop, as we have in this case, is similar to a street encounter for investigation and does not justify in every instance a protective search for weapons. "To allow the police to routinely search for weapons in all such instances would . . . constitute an 'intolerable and unreasonable' intrusion into the privacy of the vast majority of peaceable citizens who travel by automobile." 3 Wayne R. LaFave, *Search and Seizure* § 5.2(h), at 96 (3d ed. 1996) (quoting *United States v. Robinson*, 471 F.2d 1082 (D.C. Cir. 1972)). The police are, however, permitted to conduct a "pat-down" for weapons once the defendant is outside the automobile, and if the circumstances give the police reasonable grounds to believe that the defendant may "be armed and presently dangerous." *Mimms*, 434 U.S. at 112, 54 L. Ed. 2d at 337; *United States v. Robinson*, 471 F.2d 1082, 1097 (D.C. Cir. 1972), *rev'd on other grounds*, 414 U.S. 218, 38 L. Ed. 2d 427 (1973) (note 6, Court only addresses full custodial arrest situation); *see Terry v. Ohio*, 392 U.S. 1, 20-22, 20 L. Ed. 2d 889, 905-06 (1968).

In this case, the evidence can support a conclusion that the officer had reasonable grounds to believe the defendant might be armed and dangerous. The evidence reveals: (1) defendant was a convicted felon and this was known to the arresting officer; (2) defendant was under investigation, by the arresting officer, for cocaine trafficking; and (3) it was the officer's experience that cocaine traffickers "normally carry weapons." The totality of these circumstances, even in the face of a cooperative defendant who presents no obvious signs of carrying a weapon, supports the conclusion of the trial court and thus its order denying the motion to suppress.

Although argued by the State as an alternative basis to support the order of the trial court, we do not reach the question of whether the defendant consented to the search, because the State asserts no cross-assignment of error to support that argument in this Court. N.C. R. App. P. 10(d).

Affirmed.

Judge LEWIS concurs.

Judge SMITH dissents.

Judge SMITH dissenting.

I respectfully dissent, as I do not think the police officer in this case had reasonable grounds to believe that defendant was "armed and presently dangerous," *Pennsylvania v. Mimms*, 434 U.S. 106, 112, 54 L. Ed. 2d 331, 337 (1977), nor do I think the State has met its burden of showing that defendant consented to the frisk or search of his person or that the search was otherwise lawful. *See State v. Hunt*, 37 N.C. App. 315, 246 S.E.2d 159, *disc. review denied*, 295 N.C. 736, 248 S.E.2d 865 (1978).

Defendant first argues the trial court erred in concluding that the deputy had reasonable grounds to ask defendant to exit the car and to subsequently search defendant's person. While an officer may ask a vehicle occupant to exit the car as a precautionary measure for his own protection, he may not search the person unless there exists objective facts justifying a conclusion that the subject could be armed and presently dangerous. *Mimms*, 434 U.S. at 112, 54 L. Ed. 2d at 337. The burden is upon the State to show that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety

or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909 (1968); *see State v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992).

Here, the officer stopped defendant for failure to wear his seat belt. The majority holds that, because the officer knew defendant was a convicted felon under investigation for cocaine trafficking and that it was the officer's experience that cocaine traffickers "normally carry weapons," the officer was justified in doing a pat-down search of defendant. However, in this case defendant was not stopped for suspicious drug activity. Rather, he was stopped for failure to wear his seat belt. He cooperated fully with Officer Butler and offered no threat or resistance. In addition, Officer Butler's testimony that he pats down everyone he stops, "no matter what it's for," supports the conclusion that he did not believe defendant was presently dangerous in this case. In my opinion, the State has not shown that a reasonably prudent man in the same circumstances would have been warranted in the belief that defendant was armed and *presently* dangerous. For this reason, I disagree with the majority's holding that the evidence supports a conclusion that there were reasonable grounds to justify the officer's pat-down search of defendant.

In its brief, the State argues that, even if there were no objective facts to support the officer's conclusion that defendant was presently dangerous, defendant's Fourth Amendment rights were not violated, because by his conduct defendant consented to the search of his person. With this contention, I disagree.

It is well settled that a consensual search is constitutionally permissible as long as the consent is given freely and voluntarily, without coercion, duress or fraud. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854 (1973); *State v. Powell*, 297 N.C. 419, 255 S.E.2d 154 (1979). To be voluntary, it must be shown that waiver was "not given merely to avoid resistance." *State v. Little*, 270 N.C. 234, 239, 154 S.E.2d 61, 65 (1967). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227, 36 L. Ed. 2d at 862-63; *State v. Williams*, 314 N.C. 337, 333 S.E.2d 708 (1985).

In this case, the only facts regarding defendant's consent as found by the trial court were that, when the deputy asked defendant whether he had anything on him, defendant replied, "No" and raised

his hands. The trial court made no conclusion as to what defendant intended by raising his hands. The State argues that, by raising his hands, defendant implied "to an objectively reasonable person that he was *voluntarily* consenting to a pat-down search." I disagree.

The State's evidence that defendant raised his arms is insufficient to demonstrate the voluntariness of defendant's consent to be searched for weapons. At best, it shows an equivocal action which does not clearly evince consent to search. In order to meet its burden in this case, the State was required to show that defendant's consent was " 'unequivocal and specific,' " *Little*, 270 N.C. at 239, 154 S.E.2d at 65 (quoting *Judd v. United States*, 89 U.S. App. D.C. 64, 66, 190 F.2d 649, 651). To meet this burden, the State must establish by "clear and positive testimony that consent was so given." *Id.*

In this case, defendant could have been raising his arms as an act of submission to Officer Butler. Defendant's gesture could have been nothing more than a shrug, in which case, he was certainly not giving consent to search. Lastly, the gesture may have been an indication to the officer that defendant posed no physical threat. From the record before us, defendant's motivation for the gesture is simply unknown. Examining the totality of the circumstances in this case, I am of the opinion that the State has not met its burden of proving defendant consented to be searched. In such case, there is a presumption against waiver of fundamental constitutional rights. *State v. Vestal*, 278 N.C. 561, 579, 180 S.E.2d 755, 767 (1971). For the foregoing reasons, I dissent from the majority's opinion.