STATE OF NORTH CAROLINA v. KERRY DAVID BRIGGS

No. COA99-1163

(Filed 7 November 2000)

**1. Search and Seizure— lawfully detained vehicle—driver ordered to exit—no unreasonable search and seizure**

A defendant's Fourth Amendment rights against unreasonable searches and seizures were not violated when an officer required him to exit his lawfully detained vehicle at a driver's license checkpoint in a high crime area because this procedure

STATE v. BRIGGS

[140 N.C. App. 484 (2000)]

reduces the likelihood of assault on the officer and is not a serious intrusion upon the sanctity of the person.

2. **Search and Seizure— protective search—pat down for weapons—defendant outside his automobile**

An officer had reasonable suspicion to initiate a weapons pat down search of defendant at a driver's license checkpoint in a high crime area after the officer ordered defendant to exit his vehicle, because: (1) although a routine traffic stop does not justify a protective search for weapons in every instance, once defendant is outside the automobile, an officer is permitted to conduct a limited pat down search for weapons if he has a reasonable suspicion based on articulable facts under the circumstances that defendant may be armed and dangerous; and (2) the totality of circumstances was sufficient to justify a pat down search of defendant's person when defendant was stopped in a high crime area, the hour was late, the officer was aware that defendant had been charged and convicted on more than one occasion for sale and delivery of cocaine and was then on probation for his most recent conviction, and the officer was aware that drug dealers frequently carry weapons.

3. **Search and Seizure— pat down search—plain feel doctrine—cigar holder—totality of circumstances—incriminating nature of object**

An officer's seizure of a cigar holder from defendant's pocket while conducting a pat down search for weapons at a driver's license checkpoint in a high crime area after the officer ordered defendant to exit his vehicle was justified by probable cause under the plain feel doctrine based on the totality of circumstances, because: (1) the hour was late and defendant was stopped in a high crime area; (2) the officer had previously arrested defendant for possession of controlled substances and knew defendant was on probation for such an arrest at the time of the stop; (3) the officer smelled burned cigar in defendant's vehicle and on defendant, and was aware that burning cigars were commonly used to mask the smell of illegal substances; (4) defendant had previously stated he did not smoke cigars; (5) defendant's eyes were red and glassy, and his behavior suggested possible usage of a controlled substance; and (6) the officer's experience made him aware that cigar holders were commonly used to store controlled substances.

**4. Arrest— probable cause—fruits of pat down search**

     Although defendant contends an officer did not have authority to arrest him at a driver's license checkpoint stopping all vehicles in a high crime area, the fruits of the valid pat down search conducted on defendant reveal that the officer had probable cause to arrest defendant.

Appeal by defendant from order entered 29 March 1999 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 13 September 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Hal F. Askins, for the State.*

*Knox & Jones, by Michael G. Knox, for the defendant-appellant.*

LEWIS, Judge.

     Shortly after midnight on 25 February 1998, Officers Carlton and Stikeleather of the Concord Police Department were conducting a driver's license check by stopping all vehicles in a "high crime area" in Concord, North Carolina. (Tr. at 6.) Officer Carlton initially stopped defendant at the license check and requested him to produce his license and vehicle registration. As Officer Carlton was returning defendant's license to him, Officer Stikeleather approached the vehicle and recognized defendant as someone he previously arrested for possession with intent to sell and sale and delivery of cocaine. Officer Stikeleather knew defendant to be on probation at that time, and was aware that defendant had been previously convicted for possessing and selling controlled substances on more than one occasion. Although defendant denied that he had been drinking or taking drugs, Officer Stikeleather noted defendant was chewing gum "real hard" and his eyes were glassy and blood-shot. (Tr. at 7.) Further, Officer Stikeleather smelled the odor of burned cigar tobacco inside the vehicle coming from defendant's person. When the officer asked about the smell, defendant stated he did not smoke cigars, but a female who was in the vehicle earlier was smoking a cigar. The officer knew from his experience that drug users often smoked cigars to mask the smell of illegal drugs.

     Officer Stikeleather requested to search defendant's vehicle, but defendant declined. The officer then required defendant to exit the vehicle and conducted a pat down search for weapons. Officer Stikeleather testified that while conducting this pat down search, "I

felt a hard, cylindrical shape in [defendant's] pocket and it felt like a cigar holder; and I'm familiar with these because folks carry these frequently to keep their controlled substances in. It's like a little plastic test tube with a little cap on it; and there's really nothing else that's shaped exactly like that." (Tr. at 8.) The officer asked defendant what the object was, and defendant stated, "A cigar holder." (Tr. at 8.) The officer said, "I thought you didn't smoke cigars," but defendant did not respond. (Tr. at 8.) At that point, he removed the cigar holder from defendant's pocket and when he shook it, the cigar holder "rattled like it had a number of small hard objects in it." (Tr. at 9.) The officer opened the cigar holder, found ten rocks of crack cocaine inside and placed the defendant under arrest.

A true bill of indictment returned 16 March 1998 charged defendant with possession of cocaine with intent to sell and deliver and resisting, delaying and obstructing an officer. Another true bill of indictment returned 27 April 1998 charged defendant as an habitual felon. On 5 August 1998 defendant made a motion to suppress the evidence of the container of crack cocaine. On 26 March 1999 the trial court denied the motion to suppress. Defendant entered a guilty plea to possession of cocaine pursuant to N.C. Gen. Stat. § 90-95(a) and to being an habitual felon pursuant to N.C. Gen. Stat. § 14-7.1. Pursuant to the plea agreement, the charge of resisting, delaying and obstructing an officer was dismissed. Defendant was sentenced to imprisonment for a minimum of 80 months to a maximum of 105 months. Defendant appeals from the court's order denying his motion to suppress.

Defendant does not challenge the constitutionality of the stop as a basis to support his motion to suppress. Nonetheless, an investigative stop and detention leading to a pat down search must be based on an officer's reasonable suspicion of criminal activity. *State v. Sanders*, 112 N.C. App. 477, 481, 435 S.E.2d 842, 845 (1993). However, an investigative stop at a traffic check point is constitutional, without regard to any such suspicion, if law enforcement officers systematically stop all oncoming traffic. *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673-74 (1979); *Sanders*, 112 N.C. App. at 480, 435 S.E.2d at 844.

[1] Defendant first contends his Fourth Amendment rights were violated when the officer required him to exit his vehicle. The State, however, maintains the officer was justified in removing defendant from his vehicle under this Court's decision in *State v. McGirt*, 122

N.C. App. 237, 468 S.E.2d 833 (1996), *aff'd per curiam*, 345 N.C. 624, 481 S.E.2d 288, *cert. denied*, 522 U.S. 869, 139 L. Ed. 2d 121 (1997). We agree. In *McGirt* we held the Fourth Amendment's proscription of unreasonable searches is not violated when an officer requires the driver of a lawfully detained vehicle to exit the vehicle. *Id.* at 239, 468 S.E.2d at 835. This procedure reduces the likelihood of assault on the officer and "is not a 'serious intrusion upon the sanctity of the person.'" *Id.* (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 54 L. Ed. 2d 331, 336-37 (1977)).

**[2]** Defendant next argues the officer did not have a reasonable suspicion to initiate a weapons pat down search as allowed under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). Although a routine traffic stop does not justify a protective search for weapons in every instance, once the defendant is outside the automobile, an officer is permitted to conduct a limited pat down search for weapons if he has a reasonable suspicion based on articulable facts under the circumstances that defendant may be armed and dangerous. *State v. Adkerson*, 90 N.C. App. 333, 338, 368 S.E.2d 434, 437 (1988). In further explanation of this standard, this Court has stated:

> "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him."

*Sanders*, 112 N.C. App. at 481, 435 S.E.2d at 845 (quoting *State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982)).

Here, defendant was stopped in a "high crime" area (Tr. at 6), the hour was late, and the officer was aware that defendant had been charged and convicted on more than one occasion for sale and delivery of cocaine, and was then on probation for his most recent conviction. From his experience, the officer was aware that drug dealers frequently carry weapons. The totality of these circumstances was sufficient to justify a pat down search of defendant's person. *See also State v. Butler*, 331 N.C. 227, 233-34, 415 S.E.2d 719, 722 (1992) (upholding protective search of defendant where defendant was stopped in a high crime area, on a specific corner known for drug activity, and defendant immediately walked away from officer after

making eye contact); *McGirt*, 122 N.C. App. at 240, 468 S.E.2d at 835 (upholding protective search of defendant where officer knew defendant was a convicted felon who was under investigation for cocaine trafficking and it was the officer's experience that cocaine dealers normally carry weapons, even absent any obvious signs of carrying a weapon).

[3] We turn now to the most difficult consideration, which is whether the officer's seizure of the cigar holder was justified under the plain feel doctrine announced in *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334 (1993). In *Dickerson*, the Supreme Court recognized a plain feel exception to the warrant requirement of the Fourth Amendment. *Id.* at 375, 124 L. Ed. 2d at 345. The Court reasoned that if "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375-76, 124 L. Ed. 2d at 346 (emphasis added). The Court concluded that the search in *Dickerson* exceeded the scope of *Terry* because the incriminating character of the object felt was not *immediately apparent* to the officer. *Id.* at 379, 124 L. Ed. 2d at 348. The Court emphasized that "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." *Id.* at 378, 124 L. Ed. 2d at 347 (quoting *State v. Dickerson*, 481 N.W.2d 840, 844 (Minn. 1992)). After feeling the lump in Dickerson's pocket, the officer reached into it and pulled out a bag of cocaine. The Court found the officer's manipulation of the object in *Dickerson* unlawful, stating the police officer "overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*. *Id.* (quoting *Terry*, 392 U.S. at 26, 20 L. Ed. 2d at 908). Thus, if after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the "immediately apparent" requirement has not been met and the plain feel doctrine cannot justify the seizure of that object. *Id.* at 375, 124 L. Ed. 2d at 345.

There is a split of authority among the courts that have reviewed the plain feel doctrine where contraband is found on the person of the defendant in a container whose shape itself does not reveal its identity as contraband. Courts upholding such seizures generally

look to factors other than an officer's bare tactile perception to determine whether the incriminating nature of the object was "immediately apparent," and thus, the officer had probable cause to seize it. *See, e.g., State v. Stevens,* 672 So. 2d 986, 987 (La. App. 1996) (seizure of matchbox upheld—officer knew, from common sense and experience, that certain areas are known for drug activity and drug sellers often place crack cocaine in matchboxes); *People v. Champion,* 549 N.W.2d 849, 858-59 (Mich. 1996), *cert. denied,* 519 U.S. 1081, 136 L. Ed. 2d 685 (1997) (seizure of pill bottle upheld under plain feel doctrine—officer with 20 years' experience in narcotics work searched defendant known to him; defendant was stopped in high-crime area; and officer discovered pill bottle in defendant's groin area); *State v. Rushing,* 935 S.W.2d 30 (Mo. 1996), *cert. denied,* 520 U.S. 1220, 137 L. Ed. 2d 837 (1997) (seizure of cylindrical medicine bottle from defendant's pocket upheld under plain feel doctrine—suspicious transaction had been observed, neighborhood had reputation as drug-trafficking area, and officer had knowledge about, and experience with, commonly used drug containers).

Several other courts, on the other hand, have determined that containers themselves cannot be "immediately apparent" as contraband, and thus, no probable cause exists to seize them. *See, e.g., United States v. Gibson,* 19 F.3d 1449 (D.C. Cir. 1994) (despite suspicious circumstances, seizure of "flat hard object" containing cocaine held improper—officer related nothing from his experience to correlate objects of this sort with criminal activity); *United States v. Mitchell,* 832 F. Supp. 1073 (N.D. Miss. 1993) (seizure of six small plastic bags of crack cocaine contained in a white athletic sock in a brown paper sack in the pocket of defendant's leather jacket unlawful—an "immediately apparent" determination of contraband made as a result of a single pass of the officer's hand over defendant's leather jacket not possible despite suspicious circumstances and that both officers were seasoned veterans in narcotics); *Warren v. State,* No. 1980792, 2000 WL 1273939, at *7 (Ala. Crim. App. Sept. 8, 2000) (seizure of a Tic Tac box from defendant's front pants pocket held improper despite tip from informant that defendant and a group of men were buying and selling drugs); *State v. Parker,* 622 So. 2d 791 (La. App.) (seizure of matchbox from defendant's pocket containing drugs unlawful since identity of contraband was not readily identifiable, despite high crime area, informant tip of drug activity in the location of defendant and fidgety defendant), *cert. denied,* 627 So. 2d 660 (La. 1993); *Campbell v. State,* 864 S.W.2d 223 (Tex. Crim. App.

1993) (seizure of film canister containing crack cocaine from defendant's front pocket unlawful, despite "impaired" defendant).

This Court has applied the plain feel doctrine to an officer's seizure of an object in this context on several occasions. However, these cases do not indicate that our courts have adopted any set rule for applying the plain feel doctrine in the situation where contraband is found in a container whose shape itself does not reveal its identity as contraband. *But cf. State v. Wilson*, 112 N.C. App. 777, 437 S.E.2d 387 (1993) (seizure of lumps in package in breast pocket upheld because the nature of the contraband was apparent from the officer's tactile perception). Incidentally, our authority does not fall neatly on any one side of the split of authority previously discussed.

First, in *State v. Beveridge*, 112 N.C. App. 688, 436 S.E.2d 912 (1993), *aff'd per curiam*, 336 N.C. 601, 444 S.E.2d 223 (1994), a panel of this Court invalidated an officer's seizure of a cylindrical shaped plastic baggie from defendant's pocket under *Dickerson*. At the time of the seizure, it was after midnight, the officer was aware that previous arrests had been made for controlled substances violations in the area and the defendant appeared to be under the influence of controlled substances. *Id.* at 689, 691, 436 S.E.2d at 912-13. While conducting a pat down of defendant, the officer felt a cylindrical bulge in defendant's pocket which, based on the officer's experience and training and the circumstances, he believed to contain controlled substances. *Id.* at 690, 436 S.E.2d at 913. The officer asked the defendant what was in his pocket. *Id.* Defendant started laughing and responded "money," reached into his pocket and pulled out some money, but appeared to conceal something else in his hand. *Id.* The officer asked defendant what was in his hand. *Id.* Defendant opened his hand and the officer observed a plastic baggie containing a white powdery substance later determined to be cocaine. *Id.* The officer seized the baggie. *Id.*

The *Beveridge* Court determined the officer did not have probable cause to seize the object, stating:

> [The officer's] testimony indicates that he did not know that the bag contained contraband until he asked the defendant to turn out his pockets and show him the contents in his hands. He knew only that there was a cylindrical bulge in the pocket of the defendant's jeans, and that the bulge felt like a plastic baggie. . . . While the pat-down revealed that the defendant had a plastic baggie in his pocket, the officer's testimony at *voir dire* indicated

that it was not *immediately apparent* to him that the baggie held contraband. Without some other exigency to justify the continued warrantless search of the defendant, he was no longer authorized under *Terry* and its progeny to invade the defendant's privacy.

*Id.* at 696, 436 S.E.2d at 916. Thus, in invalidating the search under the plain view doctrine, it appears the Court in *Beveridge* did not consider the several suspicious factors surrounding the officer's seizure of the baggie. Rather, the Court effectively held that the container itself (i.e., the cylindrical bulge which felt like a plastic baggie) was not "immediately apparent" as contraband pursuant to the officer's tactile perception of the object. *Id.*

Subsequently in *In re Whitley*, 122 N.C. App. 290, 468 S.E.2d 610, *disc. review denied*, 344 N.C. 437, 476 S.E.2d 132 (1996), this Court upheld an officer's seizure of a plastic bag of cocaine from respondent's person. While conducting a lawful pat down of respondent's lower body on the outside of his pants, an item which was concealed inside respondent's pants fell into the officer's hand. *Id.* at 291, 468 S.E.2d at 611. When the officer felt the item fall, he reached into the leg of respondent's pants and seized it, discovering a plastic bag with a white powdery substance. *Id.*

In *Whitley*, there was no evidence as to the officer's tactile perception of the object when it fell into his hand. Thus, the Court did not even consider whether the baggie itself was "immediately apparent" as contraband pursuant to the officer's tactile perception, as did the Court in *Beveridge*. Instead, the *Whitley* Court upheld the search based on the officer's personal experience as a law enforcement officer, concluding that this experience provided the officer probable cause to believe the object was some type of illegal substance. *Id.* at 293, 468 S.E.2d at 612. Absent any additional evidence indicating the officer impermissibly manipulated the object, the *Whitley* Court upheld the seizure.

This Court again addressed the issue in *State v. Benjamin*, 124 N.C. App. 734, 478 S.E.2d 651 (1996). While conducting a lawful *Terry* search, the officer in *Benjamin* felt two hard, plastic containers in defendant's pocket. *Id.* at 736, 478 S.E.2d at 652. The officer asked defendant, "What is that?" Defendant responded that it was "crack." *Id.* As a result, the officer seized the containers. *Id.* The Court upheld the officer's seizure of the vials of crack cocaine. *Id.* at 741, 478 S.E.2d at 655.

The validity of the seizure in *Benjamin*, however, hinged on the fact that the defendant stated to the officer that the containers contained crack before the officer seized them. *Id.* Although the Court mentioned other related factors in its application of the plain feel doctrine, such as the officer's experience, narcotics training and the size, shape and mass of the object, it was the defendant's *statement* which supplied the probable cause to seize the objects. *Id.* Significantly, the *Benjamin* Court noted, "Had [the officer] seized the items after defendant had made no response to the officer's question, or defendant had answered that the object contained something other than contraband, our analysis would necessarily be far different." *Id.* Whether the Court would have accorded weight to the attendant circumstances related to the officers' experience is not made clear. Accordingly, we find the analysis in *Benjamin* inapposite here.

After considering the various cases addressing this issue, we conclude that the better-reasoned view is to consider the totality of the circumstances in determining whether the incriminating nature of the object was immediately apparent and thus, probable cause existed to seize it. We acknowledge the baseline principle that legality of the seizure in this case ultimately hinges on whether Officer Stikeleather had probable cause to believe the cigar holder contained contraband before he seized it. When the *facts and circumstances within the officer's knowledge* are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband, probable cause exists. *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514 (1983). It is well settled that the *probable* cause determination does not require hard and fast certainty by an officer, but involves more of a common-sense determination. *Id.* Here, that involves considering the evidence as understood by those versed in the field of law enforcement under the circumstances then existing.

Accordingly, we consider the numerous facts and circumstances surrounding the officer's seizure of the cigar holder in determining whether seizure of the cigar holder was lawful. Here, the hour was late and defendant was stopped in a "high crime" area. (Tr. at 6.) The officer had previously arrested the defendant for possession of controlled substances and knew defendant was on probation for such an arrest at the time of the stop. The officer smelled burned cigar in defendant's vehicle and on defendant, and was aware that burning cigars were commonly used to mask the smell of illegal substances. Defendant had previously stated he did not smoke cigars. His eyes

were red and glassy, and his behavior suggested possible usage of a controlled substance. Furthermore, the officer's experience made him aware that cigar holders were commonly used to store controlled substances. Considering these facts and circumstances, Officer Stikeleather had sufficient information to warrant a person of reasonable caution in the belief that the item he detected contained contraband. Absent any evidence indicating impermissible manipulation of the object by the officer, we conclude seizure of the cigar holder in this case was lawful.

**[4]** In his last assignment of error, defendant contends the officer did not have authority to make an arrest. Since we have concluded all other aspects of the stop, search and resulting seizure were valid, we also conclude that, based on the fruits of the valid pat down search, the officers had probable cause to arrest the defendant.

Our analysis makes it unnecessary to address defendant's remaining argument. The trial court properly denied defendant's motion to suppress.

Affirmed.

Judges WALKER and HUNTER concur.