DILLON, Judge.
Defendant appeals from a conviction for first-degree murder. For the following reasons, we find no prejudicial error in Defendant's trial.
I. Background
Defendant was indicted for first-degree murder, larceny of a motor vehicle, robbery with a dangerous weapon, and financial transaction card theft, all in connection with the killing of Thomas Fort (the "victim") in July 2011.
The State's evidence at trial tended to show that the victim began dating a woman named Shauna Parker in the spring of 2011, allowing her to use his car and to make some purchases with his bank cards. Ms. Parker lived in a shed-type structure behind a house in Creedmoor, North Carolina. At this time, the victim was living with his parents, and his father co-signed one of the victim's bank cards.
The victim and Ms. Parker broke up in July 2011. At this time, the victim explained to his father that he believed that Ms. Parker had been lying to him and was taking advantage of him.
Evidence showed that Defendant also had a relationship with Ms. Parker around this time and would frequently stay overnight at her shed.
On Saturday, 16 July 2011, the victim sent a text to his father stating that he was going to Creedmoor after work to confront Ms. Parker, indicating that he was not going to allow her to take advantage of him anymore. The victim's father received one more text from his son, near midnight stating that he was leaving Creedmoor and staying at a friend's home in North Raleigh.
The victim's father never heard from his son again. On Tuesday morning, the victim's father discovered that several thousand dollars had been charged on one of his son's bank cards over the last two days. He decided to drive to Creedmoor to confront Ms. Parker. When he arrived at her shed, he found his son's body with "a large amount of head trauma " and "a lot of blood everywhere." Residents of the main house informed the victim's father that they had seen the victim with Defendant and Ms. Parker on Saturday, but not since then.
Detectives were called to the scene, whereupon the victim's father told them that his son's car was missing. The victim's car was subsequently located by police later that morning parked at a mobile home several miles away. Defendant and Ms. Parker were found inside the mobile home. Deputies conducted a pat-down of Defendant and discovered in his back pocket two bank cards with the victim's name on them. Defendant's boots were found at the residence and they had blood stains on them. A search warrant was obtained, and a crack pipe was also found at the residence.
Police confirmed that transactions had occurred on the victim's bank cards in the early morning hours of Sunday at various stores, including purchases of large ticket items, such as televisions.
A search of the victim's car produced a blood-stained aluminum baseball bat with the DNA of the victim and of Defendant; a blood-stained fleece; a plastic tarp; a pair of cotton gloves; latex rubber gloves; cleaning supplies; and other merchandise purchased using the victim's bank cards.
The medical examiner testified that the victim died from "multiple blunt force head injuries " including three impacts to his head in which he could see "fractures of the skull underneath those lacerations of the skin," any of which "would have rendered him unconscious immediately." In addition to the lacerations to his face and head, he had several "defensive wounds " to his arms and hands.
Defendant testified on his own behalf as follows: He had been living with Ms. Parker since February 2011 and the victim had started "hanging around" her residence. On the night in question, the victim wanted to "sleep in the bed" with Ms. Parker and grabbed her in the groin area. Defendant defended her by pushing the victim, and they began to fist fight. Defendant said he then "backed off" but that Ms. Parker urged him to "[b]eat his ass." Ms. Parker pushed Defendant on to the victim, and, at some point, she handed Defendant a baseball bat. Defendant struck the victim, "three or four times" until "he didn't respond no more[.]" About fifteen minutes later, Defendant and Ms. Parker left in the victim's car but believed the victim was still alive. Ms. Parker gave Defendant the victim's bank cards. Defendant admitted to going on a shopping spree with the cards and stated that the more expensive items were traded for drugs.
The jury found Defendant guilty of all charges. The trial court sentenced Defendant to life without the possibility of parole for the first-degree murder conviction and arrested judgment on each of the remaining convictions. Defendant gave notice of appeal in open court.
II. Analysis
On appeal, Defendant contends that the trial court (1) erred in denying his motion to dismiss the charge of first-degree murder; (2) committed prejudicial error in failing to instruct the jury on defense of another; (3) committed plain error in instructing the jury on acting in concert; and (4) erred in denying his motion to suppress evidence obtained from a search warrant and a pat down of Defendant's person when he was detained.
A. Insufficiency of the Evidence
Defendant contends that the trial court erred in denying his motion to dismiss because the State failed to put forth substantial evidence to show that he intentionally killed the victim with premeditation and deliberation. The standard of review for a trial court's denial of a defendant's motion to dismiss for insufficiency of the evidence is well established:
A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.
State v. Johnson,203 N.C.App. 718, 724, 693 S.E.2d 145, 148 (2010) (marks omitted). Additionally, "[t]he Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." State v. Phillpott,213 N.C.App. 468, 478, 713 S.E.2d 202, 209 (2011).
We disagree with Defendant's argument. Rather, we believe that the evidence, taken in the light most favorable to the State, supports the jury's verdict based on premeditation and deliberation. For instance, the elements of premeditation and deliberation are satisfied under the "felled victim" theory, which states that "when numerous wounds are inflicted, the defendant has the opportunity to premeditate and deliberate from one [blow] to the next." State v. Locklear,363 N.C. 438, 455-56, 681 S.E.2d 293, 306-07 (2009). Specifically, there was evidence which showed that Defendant struck the victim at least three times with a baseball bat with enough force to knock him out with any one of the blows. Accordingly, Defendant's argument is overruled.
In any event, we note that the jury was instructed on first-degree murder based both on premeditation and deliberation andon the felony murder rule and that the jury found Defendant guilty of first degree murder based on both theories. Even assuming, arguendo,there was a lack of substantial evidence to show premeditation and deliberation, we find no reversible error as Defendant makes no challenge to the trial court's denial of his motion to dismiss for insufficient evidence the first-degree murder charge based on the felony murder rule. See State v. Grainger,--- N.C. ----, 766 S.E.2d 280, 282 (2014) (holding that "[b]ecause defendant was convicted of first-degree murder under theories of both premeditation and deliberation and the felony murder rule, and defendant's conviction for first-degree murder under the theory of felony murder is supported by the evidence, we hold that no new trial is required"). Here, there was sufficient evidence presented by the State to support the theory of felony murder based on the underlying felony robbery with a dangerous weapon.
B. Instruction for Acting in Defense of Another
Next, Defendant contends that the trial court erred in not giving an instruction regarding the defense of another from sexual assault because this defense was supported by Defendant's testimony that he killed the victim in a struggle while defending Ms. Parker after the victim grabbed her groin and said "he wanted to lay on the bed tonight." Although the trial court instructed on the defense of another, Defendant, citing State v. Hunter,305 N.C. 106, 114, 286 S.E.2d 535, 540 (1982), contends that instruction on a new defense-defense of another from sexual assault-was required because "[o]ur Courts have consistently recognized that a person can use deadly force to prevent a sexual assault." We have stated that "an error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." State v. Castaneda,196 N.C.App. 109, 116, 674 S.E.2d 707, 712 (2009) (quoting N.C. Gen.Stat. § 15A-1443(a)(2007) ). It is the defendant's burden to show prejudice. Id.As stated above, Defendant was found guilty of first-degree murder based on two theories. It has been established that the doctrine of self-defense does not excuse a charge of first-degree murder under the felony murder theory. State v. Richardson,341 N.C. 658, 668-69, 462 S.E.2d 492, 499 (1995). The Court has explained that
the purpose of the felony murder rule is to deter even accidental killings from occurring during the commission of a dangerous felony. To allow self-defense, perfect or imperfect, to apply to felony murder would defeat that purpose, and if a person is killed during the perpetration or attempted perpetration of a felony, then the defendant is guilty of first-degree felony murder-not second-degree murder or manslaughter. It is only certain applicable underlying felonies that can be subject to an instruction on perfect self-defense.[1]
Id.It has further been stated that "one may lawfully do in another's defense only what the other might lawfully do in his own defense." State v. McLawhorn,270 N.C. 622, 629, 155 S.E.2d 198, 204 (1967). Therefore, even assuming arguendothat the exclusion of this instruction was error as to the charge of first-degree murder based on premeditation and deliberation, there would not be a different result in the trial because Defendant was also convicted of first-degree murder based on felony murder, a charge in which this defense would be inapplicable. Defendant's argument is overruled.
C. Instruction on Acting in Concert
Defendant contends that the trial court committed plain error in instructing the jury on acting in concert regarding the murder because the evidence tended to show that Defendant was the only person that fought with and struck the victim with his hands and the bat and that Ms. Parker was only present during the homicide. Defendant failed to object to the inclusion of an instruction on acting in concern during the charge conference; thus, we review his argument for plain error. SeeN.C. R.App. P. 10(a)(4).
Our Supreme Court has stated that "[i]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose ... or as a natural or probable consequence thereof." State v. Golphin,352 N.C. 364, 456, 533 S.E.2d 168, 228 (2000) (marks omitted). Felony murder has two elements: (1) "[a] murder ... (2) which shall be committed in the perpetration or attempted perpetration of any ... robbery ... committed or attempted with the use of a deadly weapon[.]" N.C. Gen.Stat. § 14-17 (2013). The elements of first-degree murder are: (1) the unlawful killing, (2) of another human being, (3) with malice, and (4) with premeditation and deliberation. Id.Defendant's argument only challenges whether there was evidence presented to support the first element of each theory, whether the State put forth evidence that Ms. Parker and Defendant acted in concert in the murder or unlawful killing of the victim.
Here, the evidence in the light most favorable to the State showed that Ms. Parker and Defendant acting in concert to murder the victim: The victim was found dead in a shed where Ms. Parker and Defendant lived. The only persons on the scene at the time of the incident were the victim, Defendant, and Ms. Parker. Defendant and Ms. Parker fled the scene together in the victim's car and police later found in the victim's car a bloody baseball bat, which contain both the victim's and Defendant's DNA. The medical examiner testified that Defendant died from "multiple blunt force head injuries [.]" Defendant and Ms. Parker used the victim's credit cards. Ms. Parker did not testify, and Defendant's arguments are based on his testimony regarding the events that occurred. However, the circumstantial evidence shows that either Ms. Parker or Defendant, or both, while acting in concert committed an unlawful killing of the victim in the shed. The fact that Defendant may have struck the fatal blow does not render an acting in concert instruction error. See State v. Bishop,346 N.C. 365, 397-98, 488 S.E.2d 769, 786-87 (1997). As there was evidence supporting an instruction on the theory of acting in concert, Defendant's argument is overruled.
D. Motion to Suppress
Defendant contends that the trial court erred in denying his motion to suppress certain evidence obtained by police (1) from a search warrant and (2) during the pat-down. This Court's review of a trial court's suppression order is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke,306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Any findings of fact that are not challenged on appeal are "deemed to be supported by competent evidence and are binding on appeal." State v. Roberson,163 N.C.App. 129, 132, 592 S.E.2d 733, 735-36 (2004). The trial court's conclusions of law are reviewable de novo.State v. Kincaid,147 N.C.App. 94, 97, 555 S.E.2d 294, 297 (2001).
1. Search Warrant
Defendant challenges the trial court's conclusion in its written order denying his motion to suppress because the search warrant on the victim's vehicle does not adequately describe with "particularity" the property to be seized, amounting to an unconstitutional general warrant. Defendant concludes that the items seized by use of this search warrant were used to convict him of the crimes charged and he should be granted a new trial.
We note that as to the suppression of items seized from the search of the victim's vehicle the trial court denied Defendant's motion based on the validity of the search warrant and alsobecause Defendant did not have standing to object to the search. "In order to challenge the reasonableness of a search or seizure, defendant must have standing. Standing requires both an ownership or possessory interest and a reasonable expectation of privacy." State v. Swift,105 N.C.App. 550, 556, 414 S.E.2d 65, 68-69 (1992) (emphasis added); accord State v. McKinney,361 N.C. 53, 56, 637 S.E.2d 868, 871 (2006) (stating that "[a] defendant has standing to contest a search if he or she has a reasonable expectation of privacy in the property to be searched."). On appeal, Defendant failed to raise any argument asserting standing to object to the search. Accordingly, any challenge based on the trial court's ruling on standing is abandoned, see N.C. R.App. P. 28(a), and, without a challenge to this alternative basis for denying Defendant's motion to suppress, the trial court's denial stands.
Even assuming arguendothat it was challenged, we believe that Defendant did not have standing to challenge the search of the victim's car.
To be entitled to the protections of the Fourth Amendment, defendant 'must demonstrate that any rights alleged to have been violated were his rights, not someone else's.' Generally, a defendant may not object to the search and seizure of the property of another. 'The burden of showing this ownership or possessory interest is on the person who claims that his rights have been infringed.'
State v. Boyd,169 N.C.App. 204, 206-07, 609 S.E.2d 785, 787 (2005) (quoting State v. Ysut Mlo,335 N.C. 353, 377-78, 440 S.E.2d 98, 110-11 (1994) ). "No thief has any reasonable expectations of privacy in his use of the property he has stolen." Ysut Mlo,335 N.C. at 378-79, 440 S.E.2d at 111 (quoting State v. Greenwood,301 N.C. 705, 709, 273 S.E.2d 438, 441 (1981) ). Additionally, "[o]ur Courts will not assume ownership or a possessory interest in property based on mere possession." State v. Stitt,201 N.C.App. 233, 241, 689 S.E.2d 539, 547 (2009) (citing Boydat 207, 609 S.E.2d at 787 which recognized that a "temporary use of property does not automatically create an expectation of privacy in that property").
Here, the unchallenged findings state that the vehicle "was registered to the victim" and that "Defendant does not contend that he owned the victim's [vehicle] or had a right to possess it." Detectives testified that they checked and the victim was the owner of the vehicle. The evidence shows that at best the vehicle may have been loaned to Ms. Parker, not Defendant, and, at worst, Ms. Parker and Defendant had stolen the vehicle following the assault on the victim. Accordingly, based on these unchallenged findings, Defendant did not meet his burden of establishing a possessory right in the vehicle to show standing to challenge the search of the vehicle. Defendant's argument is overruled.
2. Pat-down of Defendant
Lastly, Defendant contends that the trial court erred in concluding that the seizure of the victim's bank cards from Defendant's back pocket during a pat-down search prior to placing him in the patrol car was a reasonable search and seizure based on the strong interest in officer safety. Defendant argues that the officers were only permitted to search for weapons during the pat down and could not seize the bank cards because it was not "immediately apparent" that the bank card was a weapon during the pat down. Defendant concludes that this evidence was unconstitutionally seized from his person, it was used in convicting him of the charged crimes, and therefore, he should receive a new trial.
This Court has stated that "[t]he purpose of the officer's frisk or pat-down is for the officer's safety; as such, the pat-down is limited to the person's outer clothing and to the search for weapons that may be used against the officer." State v. Robinson,189 N.C.App. 454, 458, 658 S.E.2d 501, 504 (2008) (marks omitted). Therefore, we have stated that a police officer is permitted to conduct a stop and pat-down, when he "observes unusual behavior which leads him to conclude, in light of his experience, that criminal activity may be occurring and that the person may be armed and dangerous[.]" Id.(citing Terry v. Ohio,392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889, 911 (1968) ). Defendant concedes that the officer could stop him but challenges the search of his person. Under the "plain feel" doctrine, we have stated that
[i]f during "[a] limited weapons search, contraband or evidence of a crime is of necessity exposed, the officer is not required by the Fourth Amendment to disregard such contraband or evidence of crime." State v. Streeter,17 N.C.App. 48, 50, 193 S.E.2d 347, 348 (1972). "Evidence of contraband, plainly felt during a pat-down or frisk, may ... be admissible, provided the officer had probable cause to believe that the item was in fact contraband." [State v. Shearin,170 N.C.App. 222, 226, 612 S.E.2d 371, 376 (2005) ] (citing Minnesota v. Dickerson,508 U.S. 366, 37577, 113 S.Ct. 2130, 124 L.Ed.2d 334, 346-47 (1993) ).
Under the "plain feel" doctrine if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. Minnesota,508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334.
This Court must consider the totality of the circumstances in determining whether the incriminating nature of the object was immediately apparent and thus, whether probable cause existed to seize it. State v. Briggs,140 N.C.App. 484, 492, 536 S.E.2d 858, 863 (2000). A probable cause determination does not require hard and fast certainty by the officer but involves more of a commonsense determination considering evidence as understood by those versed in the field of law enforcement. Id.at 493, 536 S.E.2d at 863.
Robinson,189 N.C.App. at 458-59, 658 S.E.2d at 504-05.
The trial court's order made a number of unchallenged findings, including that the officers were looking for a murder suspect; that they had their guns drawn when they searched the mobile home for Defendant and Ms. Parker; that given the circumstances, officers considered Defendant to be dangerous; and that the officers believed that the object in Defendant's back pocket could have been a sharp object such as a razor. The trial court concluded that "based upon the circumstances known to law enforcement at the time they encountered the Defendant, the pat-down search of Defendant prior to placing him in a patrol car that located the victim's bank cards in the Defendant's back pocket was a reasonable search and seizure in light of the strong interest in officer safety."
Based on the totality of the circumstances and applying "a common-sense determination considering evidence as understood by those versed in the field of law enforcement," see id.,we believe that the officers had probable cause to believe that the object felt in Defendant's back pocket during the pat down could have been contraband, such as a cutting weapon, like a razor, and therefore, for officer safety, could search and remove the credit cards from Defendant's pocket. Accordingly, Defendant's argument is overruled.
For the foregoing reasons, we find no prejudicial error in Defendant's trial.
NO PREJUDICIAL ERROR.
Judges STROUD and DAVIS concur.
Report per Rule 30(e).
Opinion
Appeal by Defendant from judgment entered 3 March 2014 by Judge Paul C. Ridgeway in Granville County Superior Court. Heard in the Court of Appeals 19 March 2015.

It is Defendant's argument that this defense would be available to excuse his killing of the victim, not the underlying felony of robbery with a dangerous weapon. See Richardson, 341 N.C. at 668, 462 S.E.2d at 499 (stating that "self-defense is available in felony murder cases only to the extent that self-defense relates to applicable underlying felonies").