STATE OF NORTH CAROLINA v. BRYAN LEON ROBINSON

No. COA07-1180

(Filed 1 April 2008)

**1. Search and Seizure— probable cause—plain feel doctrine—film canister with crack cocaine**

The trial court did not err in a maintaining a vehicle to keep or sell controlled substances and possession with intent to sell and deliver cocaine case by concluding that an officer had prob-

STATE v. ROBINSON

[189 N.C. App. 454 (2008)]

able cause to search defendant's pocket and seize a film canister and its contents, because the totality of circumstances revealed that there was substantial evidence that the film canister was immediately identifiable by the officer as containing crack cocaine including that: (1) the officer testified that he had arrested at least three others who had exactly the same type of canister, and they had narcotics stored in it; (2) the area the officer patrolled had a reputation for being a drug location, and the officer was aware of reports that defendant sold drugs from the apartment building behind where he drove; (3) the officer made eye contact with defendant, defendant stopped talking, straightened up abruptly, and looked surprised or frightened, and the officer thought defendant was going to take off running; and (4) defendant turned his right side away from the officer and reached into his right pocket, thus prompting the officer to tell defendant to keep his hands out of his pocket. Under the plain feel doctrine, if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.

**2. Search and Seizure— *Terry* frisk—investigatory stop—reasonable articulable suspicion**

The trial court did not err in a maintaining a vehicle to keep or sell controlled substances and possession with intent to sell and deliver cocaine case by denying defendant's motion to suppress, even though defendant contends the officer did not have reasonable articulable suspicion to justify an investigatory stop and frisk under *Terry*, because the totality of circumstances revealed that the officer had more than a generalized suspicion when: (1) the officer heard a car engine revving, and thereafter defendant's car came into view crossing over onto the left side of the road, jumping the curb, and driving onto the grass; and (2) the officer's further investigation revealed defendant talking to someone inside the apartment, the officer made eye contact with defendant who stopped talking abruptly and thereafter displayed a surprised or frightened look on his face, the officer thought defendant was going to run, and defendant backed away and reached into his right pocket.

**3. Appeal and Error— meaningful review—sufficiency of findings of fact**

The trial court did not err in a maintaining a vehicle to keep or sell controlled substances and possession with intent to sell and deliver cocaine case by allegedly failing to make several findings of fact essential for meaningful appellate review, because: (1) the trial court's findings of fact were thorough and unambiguous; and (2) the factual findings supported the trial court's ultimate conclusions of law.

Appeal by Defendant from judgment entered 15 February 2007 by Judge Henry E. Frye, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 6 March 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*Sofie W. Hosford, for Defendant.*

ARROWOOD, Judge.

Bryan Leon Robinson (Defendant) appeals from judgment entered 15 February 2007 convicting him of maintaining a vehicle to keep or sell controlled substances, of possession with intent to sell and deliver cocaine, and of attaining the status of an habitual felon. We find no error.

The evidence tends to show that on 11 August 2006, while Officer William Coble (Officer Coble) conducted a "bicycle patrol" in the Ray Warren Homes community, which was "notorious for drug activity[,]" he "heard a car engine revving, [and] a loud engine noise, [which] sound[ed] like a car . . . speeding down the street." Defendant's car "came into view[,] . . . cross[ed] over onto the left side of the road[,]" "jumped the curb . . . [and drove] onto the grass[.]" Defendant then drove the vehicle "behind [a] building" out of Officer Coble's view. As Defendant drove, he "kicked up" grass with the tires. Officer Coble was "informed by radio" that Defendant owned the vehicle, and Officer Coble recalled that: "[W]e . . . received a Crime Stoppers tip which specifically named . . . the [building behind which Defendant drove] . . . as being a drug location[,]" and which named Defendant as "selling a large amount of cocaine from the [building]."

Officer Coble dismounted his bike and walked to the corner of the building. There, he saw "[Defendant] talking to someone . . . inside

the apartment." Officer Coble "made eye contact with [Defendant,]" and "[Defendant] stopped talking[.]" Defendant "straightened up very abruptly, and he had . . . a surprised or frightened look on his face." Officer Coble thought "he was going to take off running." When Officer Coble "asked him what he was doing[,]" Defendant "started backing away." He "turn[ed] his right side away" from Officer Coble and "reach[ed] into his right pocket[.]" Officer Coble told him to "[j]ust keep your hands out of your pockets."

Officer Coble "did a pat frisk" and "touched the pocket [into which Defendant reached,]" feeling a cylindrical object which made "a rattling sound when it moved[.]" The object felt like "[a] film canister." Officer Coble then asked, "[i]s that crack in your pocket?" Defendant responded, "No[,]" "lower[ing] his head [and] slump[ing] his shoulders[.]" Officer Coble then "reached in the pocket, pulled out the cannister, popped the lid off, [and] saw that it was full of rocks that looked like crack cocaine[.]" Officer Coble then placed Defendant under arrest. Thereafter, Officer Coble searched the car that Defendant drove, finding "several razor blades in it . . . [with] white powdery residue on them[, and] . . . a set of electronic scales."

On 18 January 2007, Defendant filed a motion to suppress evidence of "contraband found on . . . Defendant and [in] his motor vehicle[,]" arguing that the contraband was seized in violation of the 4th Amendment of the United States Constitution and Art. I, §§ 19, 21 and 23 of the North Carolina Constitution.

On 14 and 15 February 2007, the trial court heard Defendant's motion, and on 5 April 2007, the court entered an order denying Defendant's motion to suppress, concluding that Officer Coble "detained and frisked the defendant" based on "specific and articulable facts[,]" and that Officer Coble "had probable cause to search the defendant's pocket and seize the contraband[.]" The court stated that "the incriminating nature of the object was immediately apparent to the officer during an appropriately limited frisk of the defendant's person[.]"

Defendant entered a guilty plea to the charges of maintaining a vehicle to keep or sell controlled substances, of possession with intent to sell and deliver cocaine, and of attaining the status of an habitual felon. The court entered judgment sentencing Defendant to 70 to 93 months in the North Carolina Department of Correction.

From the order denying Defendant's motion to suppress, and pursuant to N.C. Gen. Stat. § 15A-979(b), Defendant appeals.

---

Our review of the denial of a motion to suppress evidence "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence . . . and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Findings of fact are "conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason*, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994). "However, the trial court's conclusions of law are fully reviewable on appeal." *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003) (citations omitted). "At a suppression hearing, conflicts in the evidence are to be resolved by the trial court[; t]he trial court must make findings of fact resolving any material conflict in the evidence." *Id.* (citations omitted).

## Plain Feel Doctrine

[1] In his first argument, Defendant contends that the trial court erred in concluding that Officer Coble had probable cause to search Defendant's pocket, seizing the film canister and its contents, because this exceeded the scope of a *Terry* frisk. We disagree.

In *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968), the United States Supreme Court held that when a police officer observes unusual behavior which leads him to conclude, in light of his experience, that criminal activity may be occurring and that the person may be armed and dangerous, the officer is permitted to conduct a pat-down search to determine whether the person is carrying a weapon. *Terry* established that "[a] police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007).

The purpose of the officer's frisk or pat-down is for the officer's safety; as such, the pat-down "is limited to the person's outer clothing and to the search for weapons that may be used against the officer." *State v. Shearin*, 170 N.C. App. 222, 226, 612 S.E.2d 371, 376 (2005). If during "[a] limited weapons search, contraband or evidence of a crime is of necessity exposed, the officer is not required by the Fourth Amendment to disregard such contraband or evidence of crime." *State v. Streeter*, 17 N.C. App. 48, 50, 193 S.E.2d 347, 348 (1972). "Evidence of contraband, plainly felt during a pat-down or

frisk, may . . . be admissible, provided the officer had probable cause to believe that the item was in fact contraband." *Shearin*, 170 N.C. App. at 226, 612 S.E.2d at 376 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375-77, 124 L. Ed. 2d 334, 346-47 (1993)).

Under the "plain feel" doctrine if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. *Minnesota*, 508 U.S. 366, 124 L. Ed. 2d 334.

This Court must consider the totality of the circumstances in determining whether the incriminating nature of the object was immediately apparent and thus, whether probable cause existed to seize it. *State v. Briggs*, 140 N.C. App. 484, 492, 536 S.E.2d 858, 863 (2000). A probable cause determination does not require hard and fast certainty by the officer but involves more of a common-sense determination considering evidence as understood by those versed in the field of law enforcement. *Id.* at 493, 536 S.E.2d at 863.

In the instant case, there was substantial evidence that the film cannister seized was immediately identifiable by Officer Coble as crack cocaine. When asked at the hearing on Defendant's motion to suppress whether "it [was] . . . immediately apparent to you that this was crack cocaine packaged in the film cannister," Officer Coble stated, "Yes, it was." Officer Coble stated that "as soon as I touched it, I heard it rattle," and then he immediately asked Defendant, "Is that crack in your pocket?" Officer Coble also said that he had "arrested [at least three] other[s] . . . [who] had exactly the same type of canister[,] and they had narcotics stored in it." The area that Officer Coble patrolled had a reputation for being a "drug location," and Officer Coble was aware of reports that Defendant sold drugs from the apartment building behind which he drove. Further, when Officer Coble "made eye contact with [Defendant,]" "[Defendant] stopped talking[,]" "straightened up very abruptly," and looked "surprised or frightened[.]" Officer Coble thought "he was going to take off running." In fact, Defendant "started backing away." Defendant "turn[ed] his right side away" from Officer Coble and "reach[ed] into his right pocket[.]" Officer Coble told him to "[j]ust keep your hands out of your pockets."

Viewing the totality of the circumstances to determine whether the incriminating nature of the film cannister was immediately appar-

ent, we conclude that Officer Coble had probable cause to seize the film cannister from Defendant's pocket. The trial court did not err in concluding that its seizure was lawful and that the film cannister filled with crack cocaine could be admitted into evidence. We overrule this assignment of error.

### Reasonable Suspicion

**[2]** In his second argument, Defendant contends that the trial court erred in denying Defendant's motion to suppress because Officer Coble did not have a reasonable articulable suspicion sufficient to justify an investigatory stop and frisk under *Terry*. We disagree.

"A police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *Barnard*, 184 N.C. App. at 29, 645 S.E.2d at 783.

> The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

*State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994). (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). A court must consider the totality of the circumstances in determining whether the officer possessed a reasonable and articulable suspicion to make an investigatory stop. *Id.* at 441, 446 S.E.2d at 70.

Defendant specifically cites *State v. Fleming* for the proposition that Officer Coble lacked reasonable articulable suspicion. In *Fleming*, the officer "had only a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that defendant was unfamiliar to the area." *State v. Fleming*, 106 N.C. App. 165, 171, 415 S.E.2d 782, 785 (1992).

We conclude that the instant case is distinguishable from *Fleming*. Here, Officer Coble had more than a "generalized suspicion[.]" *Id.* The evidence tends to show that Officer Coble "heard a car engine revving," after which Defendant's car "came into view[,] . . . cross[ing] over onto the left side of the road[,]" "jump[ing] the curb . . . [and driving] onto the grass[.]" When Officer Coble investi-

gated further, he discovered Defendant, "talking to someone . . . inside the apartment." Officer Coble "made eye contact with [Defendant,]" and "[Defendant] stopped talking[.]" Defendant "straightened up very abruptly, and he had . . . a surprised or frightened look on his face." Officer Coble thought "he was going to take off running." Defendant then "started backing away" and "reach[ed] into his right pocket[.]"

Considering the totality of the circumstances, we conclude that the foregoing evidence is sufficient to support the trial court's conclusion that Officer Coble possessed a reasonable and articulable suspicion to make an investigatory stop. This assignment of error is overruled.

## Findings of Fact

[3] In his final argument, Defendant contends that the trial court erred in "fail[ing] to make several findings of fact that were supported by the evidence and essential for meaningful appellate review of this matter." We find Defendant's argument unpersuasive.

Our review of the denial of a motion to suppress evidence "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *Cooke*, 306 N.C. at 134, 291 S.E.2d at 619.

Here, Defendant cites *Quick v. Quick* for the proposition that "[f]indings of fact must be sufficient to enable meaningful appellate review." 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982). We agree with Defendant that findings and conclusions are required in order that there may be a meaningful appellate review of the decision. *State v. Horner,* 310 N.C. 274, 279, 311 S.E.2d 281, 285 (1984). However, here, the trial judge's findings of fact are thorough and unambiguous. The trial court made the following findings of fact:

1) On August 11, 2006, Cpl. W. D. Coble and other officers with the Greensboro Police Department were conducting a bicycle patrol in the Ray Warren Homes community. The officers were part of a unit specially assigned to the public housing properties.

2) Cpl. Coble is a veteran police officer with more than twelve years of law enforcement experience. In the course of his career with the city police department, Cpl. Coble has made hundreds of

drug-related arrests. Through both formal training and practical experience, the officer has become familiar with the modes or patterns of operation of street-level drug violators, the identity of controlled substances they possess, and the manner in which those controlled substances are packaged or concealed.

3) Cpl. Coble and members of his police unit are also acquainted with the reputation for drug-related activity occurring in the Ray Warren Homes community. The immediate area subject to the bicycle patrol on this particular date was known to the officers as a place frequented by drug dealers and users. During his tenure with the unit, Cpl. Coble has personally made close to one hundred drug-related arrests in the Ray Warren Homes neighborhood.

4) In his experience, Cpl. Coble has come to recognize that often those who are involved in drug dealing activities carry firearms. In a number of drug-related arrests, the officer has recovered firearms and other weapons from the offenders.

5) During the afternoon hours on this particular date, the officers observed a vehicle, later determined to be operated by the defendant, driving erratically. The vehicle crossed the roadway, drove over a curb and onto the lawn in front of an apartment building. The vehicle then continued around to the rear of the property and disappeared from view.

6) Cpl. Coble and Officer M.A. Overman then responded to the location to further investigate the matter. While enroute (sic), they learned from another unit officer familiar with the defendant that the vehicle belonged to him.

7) Cpl. Coble and the other officers were acquainted with the defendant based in part on a complaint received some months before that he was involved in drug activity at this particular address. Cpl. Coble knew based on that earlier investigation that the defendant had prior felony convictions for drugs and firearms.

8) As Cpl. Coble arrived at the rear of 879 Burbank Street he observed the defendant between the parked vehicle and the back door of the apartment unit. The defendant appeared to be speaking with someone inside the home.

9) When the defendant made eye contact with the approaching officer, he abruptly stopped talking, straightened and reacted in a

startled manner. The officer, who was dressed in a uniform with identifiable police insignia, recognized the defendant as the same from the prior investigation.

10) As Cpl. Coble began asking what he was doing and why he was there, the defendant, who did not respond, started backing away from the officer.

11) When the officer instructed him to stop, the defendant turned so that his right side was away from Cpl. Coble and started to reach into his pocket. The defendant ignored Cpl. Coble's command to keep his hand out of his pocket.

12) The officer, who had been walking toward the defendant during the encounter, reached and took the defendant's arm and had him place his hands on the hood of the car. Cpl. Coble, based on his observations, what he knew of the defendant, and in his experience given the circumstances, believed that the defendant may be armed with a weapon and presently dangerous.

13) Cpl. Coble informed the defendant that he was going to make sure that he did not have a gun, and then began to conduct a frisk of his outer clothing for weapons.

14) When the officer pressed an open hand against the defendant's right side pocket he felt a cylindrical container and heard its contents "rattle". It was immediately apparent to Cpl. Coble based on his prior experience that the item was a container of crack cocaine. The officer had made arrests in the past wherein crack cocaine was kept in similar containers.

15) Cpl. Coble asked the defendant if the item was crack cocaine. The defendant, who did not answer the officer, slumped his shoulders and lowered his head.

16) The officer retrieved the suspected item from the defendant's pocket and found that it was a 35mm film canister with several off-white rock-like substances inside that he recognized to be crack cocaine.

17) The defendant was then placed under arrest and his vehicle was searched. The officer recovered items of drug paraphernalia that included a set of electronic scales and several razor blades covered in suspected cocaine residue from the passenger compartment.

We do not believe the findings of fact in this case are comparable to the findings of fact in *Quick*, which the Court stated were "woefully inadequate . . . [and in which] a serious 'gap' exist[ed]." *Quick*, 305 N.C. at 458, 290 S.E.2d at 661.

Because our review of the denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence[,]" we cannot agree with Defendant's contention that the trial court erred by failing to make several specific findings of fact in addition to the foregoing comprehensive findings.

We conclude that the findings of fact "are supported by competent evidence, [and therefore] . ... conclusively binding on appeal[.]" *Cooke*, 306 N.C. at 134, 291 S.E.2d at 619. Moreover, the "factual findings . . . support the judge's ultimate conclusions of law." *Id.*

For the foregoing reasons, we conclude that the trial court did not err by denying Defendants motion to suppress.

No Error.

Judges McCULLOUGH and STEELMAN concur.