An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1311

Filed: 2 June 2015

Union County, No. 10 CRS 056379

STATE OF NORTH CAROLINA

v.

HERBERT JOHN ROBINSON, JR.

Appeal by defendant from judgment entered 28 January 2014 by Judge Michael Beale in Union County Superior Court. Heard in the Court of Appeals 22 April 2015.

*Attorney General Roy Cooper, by Special Deputy Attorney General K. D. Sturgis, for the State.*

*Parish & Cooke, by James R. Parish, for defendant.*

McCULLOUGH, Judge.

Defendant Herbert John Robinson, Jr., appeals from his conviction of first-degree rape of a child under the age of thirteen (13). For the reasons stated herein, we find no error.

## I.    Procedural History

On 31 January 2011, defendant was indicted for one count of first-degree rape of a child under the age of thirteen (13), in violation of N.C. Gen. Stat. § 14-27.2(a), and one count of first-degree kidnapping, in violation of N.C. Gen. Stat. § 14-39, with an offense date of 28 September 2001.

Prior to trial, defendant moved to suppress statements he had made during a 9 November 2010 interrogation and any in-court or out-of-court identification of defendant by the alleged victim, Tabitha[1]. Defendant also moved to suppress evidence obtained on 9 November 2010 as a result of a search warrant and any DNA evidence. The trial court conducted a pretrial hearing on defendant's motions to suppress and denied his motions.

Defendant's trial commenced at the 21 January 2014 Criminal Session of Union County Superior Court, the Honorable Michael E. Beale, presiding. The State dismissed defendant's first-degree kidnapping charge. On 28 January 2014, a jury found defendant guilty of first-degree rape of a child under the age of thirteen (13). Defendant was sentenced as a prior record level IV and to a term of 380 months to 468 months imprisonment. Defendant was also ordered to register as a sex offender for life and to be subject to satellite-based monitoring for life.

Defendant appeals.

## II.    Factual Background

---

[1] A pseudonym has been used to protect the identity of the victim who was a minor at the time of the alleged crime.

The evidence tended to show that on 28 September 2001, Tabitha was twelve years old and in the seventh grade. After school ended around 3:30 p.m., while it was still light outside, she began walking home from school. On the side of the road, Tabitha saw a man leaning against a blue or gray, older model car, smoking a cigarette. The man was a white male with light brown, short hair. He was 5'7" to 5'9" and of a medium build. After Tabitha passed the man, she noticed that he had begun following her. The man jogged towards her and told her that she "had pretty hair, and he reached out and touched it." The man asked Tabitha if she had a boyfriend and she replied "yes." The man then came up behind her, put his arm around her neck and pulled the left side of her shirt down so that her bra and chest were exposed. He lowered Tabitha to the ground, had his pants down around his knees, and tried unsuccessfully to penetrate Tabitha anally. The man told Tabitha to roll over and subsequently penetrated her vaginally.

Tabitha testified that she could feel facial hair on defendant and that she "got a good look at his face whenever I rolled over, before he laid on top of me." Tabitha did not say anything nor tried to fight the man because she was "scared that if I fought back that he would hurt me[.]" After the man was finished, he asked for Tabitha's phone number and name, which Tabitha offered. Tabitha was able to run to a friend's house and called her mom to tell her what had happened. Thereafter, Tabitha and her mom contacted the police and went to the scene where the incident

had occurred. Tabitha was interviewed by detectives and went to the hospital where a rape kit was conducted. After several days, Tabitha went to the sheriff's station to look through local high school yearbooks. She incorrectly identified one male from a yearbook and told officers that she was 85% certain that he was her perpetrator.

On 1 November 2010, Lieutenant Helms of the Union County Sheriff's Department received information that defendant's DNA matched the DNA found in Tabitha's rape kit. Lieutenant Helms contacted Tabitha and let her know of the match and that an arrest was planned. On 8 November 2010, he applied for and was granted a search warrant for a buccal swab of defendant's inner cheek. Lieutenant Helms learned that defendant was located in the Pender County Correctional Facility. Lieutenant Helms contacted the Pender County Sheriff's Department in order to have a local officer accompany him in executing the search warrant. On 9 November 2010, Lieutenant Helms, along with Detective Andy Mullis from the Union County Sheriff's Department, went to meet Detective Brennan Regner with the Pender County Sheriff's Department. All three went together to the Pender County Correctional Facility. Detective Regner read the search warrant to defendant and signed the search warrant as the officer making return. Lieutenant Helms took the buccal swab of defendant's inner cheek. Afterward, Detective Regner exited the room.

Lieutenant Helms testified that he advised defendant of his *Miranda* rights and defendant waived those rights. Lieutenant Helms informed defendant that his DNA was a match on a rape kit of Tabitha. Defendant admitted to Lieutenant Helms that sometime in 2000 or 2001, defendant drove his car to a dead-end road and snorted powder cocaine and smoked crack cocaine. Defendant exited his vehicle, was walking on the railroad tracks, when he saw Tabitha walking towards him. Defendant described Tabitha as being "developed." Defendant asked Tabitha if she wanted to have sex and she did not reply. Defendant then grabbed her chest or her breast. Defendant stated that Tabitha removed her pants and he helped her down to the ground where he attempted to have sex with her. Defendant initially stated that he stopped trying to have sex with Tabitha when she told him to stop, but then later stated that he stopped attempting to have sex with her when he could not achieve an erection. Defendant then left the scene.

Sometime after 17 November 2010, subsequent to defendant's arrest, Lieutenant Helms contacted Tabitha and gave her defendant's name. Tabitha testified that she conducted an internet search of defendant's name. She discovered a picture of defendant on the North Carolina Department of Corrections website. When she saw defendant's picture, she "knew without a shadow of a doubt that that was him" based on his facial features.

A DNA analyst with the North Carolina State Crime Lab testified that the predominant DNA profile from defendant's buccal swab taken in November 2010 matched the DNA profile taken from Tabitha's rape kit in 2001.

### III.    Discussion

On appeal, defendant argues that the trial court erred by (A) denying his motion to suppress DNA results obtained pursuant to a search warrant and (B) abusing its discretion in allowing the victim to make an in-court identification of defendant as the perpetrator of the crime.

### A.    Motion to Suppress

In his first argument on appeal, defendant asserts that the trial court erred by denying his motion to suppress the DNA results obtained pursuant to the search warrant that was executed on 9 November 2010. Specifically, defendant argues that Lieutenant Helms of Union County was the officer who executed the search warrant and that he exceeded his jurisdiction in doing so. Defendant also challenges the trial court's conclusion of law number 3.

> [T]he scope of appellate review of an order [regarding a motion to suppress] is strictly limited to determining whether the trial [court]'s underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [court]'s ultimate conclusions of law.

*State v. Salinas*, 366 N.C. 119, 123, 729 S.E.2d 63, 66 (2012) (citation omitted).

"However, the trial court's conclusions of law are fully reviewable on appeal." *State*

*v. Robinson,* 189 N.C. App. 454, 458, 658 S.E.2d 501, 504 (2008) (citation omitted).

On 28 January 2014, the trial court entered an "Order on Motions to Suppress"

that contained the following pertinent findings of fact:

> 6.      That since the defendant was in custody in Pender Corrections, Lieutenant Helms contacted the Department of Corrections in writing . . . and contacted the Pender County Sheriff's Department to assist him with any jurisdictional issue, as required by 15A-247 involving the execution of a search warrant.
>
> 7.      That on November 9th, 2010, Detective Helms, along with Sergeant Mullis of the Union County Sheriff's Department, proceeded to Pender County, met Sergeant Regner of Pender County Sheriff's Department, and then followed Detective Regner to Pender Corrections.
>
> 8.      [The three] were escorted . . . to an interview room. Within a few minutes thereafter the defendant was brought into that room by DOC officials.
>
> 9.      That the defendant was informed of why they were there.  Detective Regner then read the defendant the search warrant at approximately 11:05 a.m.  Detective Regner signed the warrant as the officer making the return and gave a copy of it to the defendant.  Detective Helms then put on gloves and, using a buccal swab, swabbed the defendant's mouth and placed the swab in an evidence box.  Detective Regner then stepped out of the room but remained just outside the door during the next hour or so while the defendant was interviewed.
>
> 10.      That Detective Helms then advised the defendant of his constitutional rights . . . and the defendant voluntarily

waived his right by signing the form. The defendant was not coerced or threatened by the Union County deputies in any way.

Based on the foregoing findings of fact, the trial court entered the following pertinent conclusions of law:

1. That none of the defendant's constitutional rights, either state or federal or statutory rights under 15A, were violated in the obtaining of the defendant's oral or written statement, the search of the defendant's person pursuant to a search warrant or in the identification procedure.

. . . .

3. That the search warrant issued and served on the defendant was valid in all respects and was executed by an official with territorial jurisdiction to do so. Even assuming that Detective Regner was not the executing officer of the said search warrant, there has been no substantial violation of 15A-252 by Detective Helms when he merely swabbed the defendant's cheek after the search warrant was read by Detective Regner of the Pender County Sheriff's Department to the defendant.

Defendant argues that Lieutenant Helms of the Union County Sheriff's Department executed the search warrant because he performed the buccal swab on defendant. In doing so, defendant contends that the search warrant was not executed by an official with territorial jurisdiction and that Lieutenant Helms violated N.C. Gen. Stat. § 15A-247. Defendant also challenges conclusion of law number 3 and

argues that the violation of N.C. Gen. Stat. § 15A-247 amounted to a substantial violation pursuant to N.C. Gen. Stat. § 15A-974.

N.C. Gen. Stat. § 15A-247 (2014) provides that "[a] search warrant may be executed by any law-enforcement officer acting within his territorial jurisdiction, whose investigative authority encompasses the crime or crimes involved." N.C. Gen. Stat. § 15A-974(a)(2) (2014), entitled "Exclusion or suppression of unlawfully obtained evidence," provides that:

> (a) Upon timely motion, evidence must be suppressed if:
>
> . . . .
>
> (2) It is obtained as a result of a substantial violation of the provisions of this Chapter. In determining whether a violation is substantial, the court must consider all the circumstances, including:
> a. The importance of the particular interest violated;
> b. The extent of the deviation from lawful conduct;
> c. The extent to which the violation was willful;
> d. The extent to which exclusion will tend to deter future violations of this Chapter.

"[E]vidence will not be suppressed unless it has been obtained *as a consequence* of the officer's unlawful conduct . . . . The evidence must be such that it would not have been obtained *but for* the unlawful conduct of the investigating officer." *State v. Pearson*, 356 N.C. 22, 32, 566 S.E.2d 50, 56 (2002) (citation omitted) (emphasis in original).

Here, the trial court held in conclusion number 3 that even assuming *arguendo* that Detective Regner of Pender County was not the executing officer of the search warrant, there was no substantial violation of N.C. Gen. Stat. § 15A- 974. We agree.

We note that "[t]he interest of a defendant to be free from unlawful searches and seizures is, of course, a fundamental constitutional and statutory right in North Carolina." *State v. Hyleman*, 324 N.C. 506, 510, 379 S.E.2d 830, 833 (1989). However, assuming *arguendo* that Lieutenant Helms of Union County executed the search warrant, we find that the deviation from lawful conduct, if any, was slight. The unchallenged findings of fact, which are binding on appeal, indicate that after receiving information that defendant was in the custody of the Pender County Correctional Facility, Lieutenant Helms contacted the Pender County Sheriff's Department to request assistance in executing the search warrant. Lieutenant Helms met with Pender County Detective Regner on 9 November 2010 and followed Detective Regner to the Pender County Correctional Facility. Detective Regner, Lieutenant Helms, and defendant were all in the same interview room. It was then that Detective Regner read the search warrant and gave a copy of the warrant to defendant. Thereafter, Lieutenant Helms took the buccal swab of defendant's cheek. Based on these findings, it is apparent that Lieutenant Helms made a good faith effort and took precautions to ensure that defendant's search warrant was executed by a Pender County law enforcement officer, in compliance with N.C. Gen. Stat. §

15A-247. There is also no indication that any deviation was willful and that excluding this evidence would tend to deter future violations of this chapter. Furthermore, defendant is unable to show how his DNA evidence would not have been obtained but for the alleged unlawful conduct of Lieutenant Helms.

Based on the foregoing, we hold that the trial court did not err by denying defendant's motion to suppress his DNA evidence and affirm the order of the trial court.

### B.    In-Court Identification

Next, defendant argues that the trial court abused its discretion by allowing Tabitha to make an in-court identification of defendant in violation of Rule 403 of the North Carolina Rules of Evidence. Defendant argues that the probative value of Tabitha's in-court identification of defendant was outweighed by its prejudicial effect because the following occurred between the alleged crime date of 28 September 2001 and the trial date of January 2014: Tabitha identified another person as her assailant shortly after the alleged crime took place; Tabitha was notified in 2010 that defendant's DNA had been matched to her rape kit; Tabitha had been given defendant's name and told he was in the Department of Corrections; Tabitha conducted a computer search and found a photograph of defendant on the internet; and although in 2001 Tabitha did not describe her perpetrator as having a memorable mouth and eyes, she testified to these features at trial.

Generally, all relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (2014). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2014). "We review the trial court's decision to admit the evidence pursuant to Rule 403 for an abuse of discretion." *State v. Peterson*, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

For in-court identifications,

> there are five factors to consider in determining whether an identification procedure is so inherently unreliable that the evidence must be excluded from trial: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*State v. Washington*, 192 N.C. App. 277, 296-97, 665 S.E.2d 799, 811 (2008) (citation omitted).

In a pre-trial motion, defendant moved to suppress any in-court and out-of-court identification of defendant by Tabitha. Following a hearing, the trial court denied defendant's motion. During the trial, defendant objected to Tabitha's in-court identification of defendant. After considering *voir dire* testimony from Tabitha, the trial court made the following findings of fact:

> [T]hat there is no evidence of any suggested procedure involving identification of this defendant by the Union County Sheriff's Department or any other law enforcement officer. There is no evidence that delaying this trial was caused by the State of North Carolina in any way.
>
> That the witness in this case had an opportunity to view the perpetrator of this crime for several minutes.
>
> That it was broad daylight, shortly after school had let out on or about September 28th, 2001.
>
> That the witness has described in detail the incident.
>
> That the Court has heard -- not only heard the description here in Court, as well a tape made in 2010. Obviously, [Tabitha] remembered details and gave a great degree of attention as to what was happening.
>
> That she gave prior descriptions of the perpetrator that were consistent in terms of height, build, race, hair color and haircut.
>
> That she has testified here in court today, as well as when she saw his picture on the internet, that she is 100-percent certain that the perpetrator was the defendant in this case.
>
> That in 2001, shortly after the crime, she did look through several high school yearbooks and did pick out an individual who was not the defendant in this case but had

similar facial features to him.

That she was not completely certain at that time that that person was the perpetrator but was approximately 85-percent sure.

That at the time she was wanting the Union County Sheriff's Department to catch the perpetrator and bring him to trial.

That the witness described the features today of this defendant that she observed that are quite notable, including the way his eyes look as well as a description of a bulge under his lower lip. She described it as if he may have snuff in his mouth.

That that appears consistent to this Court with his observations of the defendant that she has identified.

Based on the foregoing, the trial court concluded that although it had been more than twelve years between the crime and confrontation, the in-court identification was admissible under Rule 403 and overruled defendant's objection.

It is well established that "[i]n our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record." *State v. Locklear*, 363 N.C. 438, 449, 681 S.E.2d 293, 302-303 (2009) (citation omitted). Here, our review of the trial court's findings reveals that it considered Tabitha's opportunity to view defendant at the time of the crime, her degree of attention, the accuracy of Tabitha's prior description of defendant, Tabitha's level of certainty, and the length of time between the crime and confrontation in its determination of whether the identification was so inherently unreliable that it must

be excluded. Accordingly, we hold that the trial court did not abuse its discretion in admitting Tabitha's in-court identification of defendant.

## IV.     Conclusion

Where the trial court did not err by denying defendant's motion to suppress DNA evidence and where the trial court did not abuse its discretion by admitting Tabitha's in-court identification of defendant, we hold that defendant received a fair trial, free of prejudicial error.

NO ERROR.

Judges STEELMAN and STEPHENS concur.

Report per Rule 30(e).