An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1097

Filed 19 November 2025

Johnston County, Nos. 22CR360484-500, 23CR000127-500

STATE OF NORTH CAROLINA

v.

PATRIC SHANE OQUIN

Appeal by defendant from judgment entered 28 March 2024 by Judge Keith O. Gregory in Johnston County Superior Court. Heard in the Court of Appeals 10 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Adrian W. Dellinger, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.*

ZACHARY, Judge.

Defendant Patric Shane OQuin[1] appeals from the trial court's judgment entered upon his guilty plea to possession of methamphetamine, possession of drug

---

[1] We note that Defendant's last name appears with inconsistent capitalization throughout the record. For our purposes, we use the variation used in Defendant's brief: "OQuin."

paraphernalia, and attaining habitual-felon status following the trial court's denial of his motion to suppress. On appeal, Defendant argues that the court erred by denying his motion to suppress the methamphetamine and drug paraphernalia garnered during a law enforcement officer's *Terry* stop and frisk. After careful review, we affirm.

## I.    Background

In the evening of 9 December 2022, Johnston County Sheriff's Deputy Steven Lambert received a call reporting that an individual in light clothing was walking on the side of Cornwallis Road carrying a rifle. When Deputy Lambert arrived at the scene, it "was dark outside" and he observed Defendant "walking on the side of the road, wearing light colored clothing, and carrying what looked to him like a rifle." Deputy Lambert parked, exited his patrol vehicle, and asked Defendant to approach him.

As Defendant walked toward Deputy Lambert, he seemed "slightly impaired"; when he walked closer, Deputy Lambert was able to see that Defendant was actually carrying "a long metal object" that "weighed approximately 30 to 45 pounds" and which Deputy Lambert believed "could be used as a weapon." Deputy Lambert asked Defendant what he was doing and Defendant responded that "he was looking for his 'drive staff' [sic] for his truck," which had been lost when his vehicle broke down a few days earlier.

Deputy Lambert noted that "Defendant appeared to be nervous and began

mumbling to himself and looking around repeatedly. . . . Defendant then made multiple statements regarding his dead grandfather and how his dead grandfather had been trying to contact him through his dreams. . . . Defendant continued to mumble." In addition, "[b]ased on Deputy Lambert's training and experience it was not unusual for persons who are in possession of something that can be considered a weapon to have other weapons."

Due to Defendant's behavior and the circumstances of the encounter, "Deputy Lambert conducted a brief pat down frisk of Defendant." In Defendant's back left jean pocket, Deputy Lambert felt an object that he believed "to either be a knife or contraband." The object was revealed to be "a partially broken glass pipe with white crystal-like residue which was apparent to [Deputy Lambert] to be illegal contraband."

Based on this finding, Deputy Lambert searched Defendant and discovered "two scales and a torch lighter," as well as "a small plastic bag that contained a white crystal-like substance." Defendant admitted that the white crystal-like substance was—and later lab analysis confirmed it to be—methamphetamine. Deputy Lambert placed Defendant under arrest.

On 6 February 2023, a Johnston County grand jury indicted Defendant for possession of methamphetamine, possession of drug paraphernalia, and attaining habitual-felon status.

On 19 January 2024, defense counsel filed a motion to suppress evidence found

as a result of Deputy Lambert's stop and frisk. The motion came on for hearing on 21 March 2024. The trial court heard testimony from Deputy Lambert and the arguments of counsel. The court then concluded that "there was sufficient reasonable articulable suspicion" for both the initial stop and the subsequent frisk of Defendant. On 1 May 2024, the trial court entered its order denying Defendant's motion to suppress.

On 21 March 2024, Defendant entered into a plea arrangement in which he expressly retained the right to appeal the denial of his motion to suppress. The trial court accepted Defendant's plea of guilty to possession of methamphetamine, possession of drug paraphernalia, and attaining habitual-felon status, consolidated the charges, and entered judgment against Defendant, sentencing him to a term of 40 to 60 months' imprisonment in the custody of the North Carolina Department of Adult Correction.

Defendant gave oral notice of appeal.

**II.     Discussion**

Defendant argues that the trial court erred by denying his motion to suppress because Deputy Lambert "did not have reasonable articulable suspicion to stop . . . and frisk him." We disagree.

**A. Standard of Review**

When reviewing a trial court's denial of a motion to suppress, "the scope of this Court's review is strictly limited to determining whether the trial judge's underlying

findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Carrouthers*, 213 N.C. App. 384, 387, 714 S.E.2d 460, 463 (cleaned up), *disc. review denied*, 365 N.C. 361, 718 S.E.2d 392 (2011). "Unchallenged findings of fact are presumed to be supported by competent evidence." *State v. Johnson*, 269 N.C. App. 76, 79, 837 S.E.2d 169, 172–73 (2019), *aff'd as modified*, 378 N.C. 236, 861 S.E.2d 474 (2021).

Here, Defendant does not challenge the trial court's findings of fact, merely whether those unchallenged findings support the court's conclusions that Deputy Lambert had reasonable articulable suspicion to justify the stop and frisk of Defendant. We review the trial court's conclusions of law de novo. *Id.* at 79, 837 S.E.2d at 173.

**B. Analysis**

"Both the federal and North Carolina constitutions protect an individual's right to be free from unreasonable government searches and seizures absent probable cause." *Id.* at 82, 837 S.E.2d at 174. One exception to the requirement of probable cause is the *Terry* stop and frisk. *Id.* at 82, 837 S.E.2d at 174–75. A law enforcement officer may "stop and briefly search a suspect and the area within the suspect's grasp for weapons if: (1) the stop, at its initiation, was premised on a reasonable suspicion that crime may have been afoot; and (2) the officer possessed a reasonable suspicion

that the individual involved was armed and dangerous." *Id*. (cleaned up and emphasis omitted); *see also Terry v. Ohio*, 392 U.S. 1, 30–31, 20 L. Ed. 2d 889, 911 (1968).

**The Terry *Stop***

"*Terry* established that a police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Robinson*, 189 N.C. App. 454, 458, 658 S.E.2d 501, 504 (2008) (cleaned up). "This same standard—reasonable suspicion—applies under the North Carolina Constitution." *State v. Jackson*, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015).

"Reasonable suspicion demands more than a mere hunch on the part of the officer but requires less than probable cause and considerably less than preponderance of the evidence." *State v. Johnson*, 378 N.C. 236, 244–45, 861 S.E.2d 474, 483 (2021) (cleaned up). "In any event, reasonable suspicion requires only some minimal level of objective justification and arises from specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion presented by the limited search." *Id*. at 245, 861 S.E.2d at 483 (cleaned up). "A court must consider the totality of the circumstances in determining whether the officer possessed a reasonable and articulable suspicion to make an investigatory stop." *Robinson*, 189 N.C. App. at 460, 658 S.E.2d at 505.

"An informant's tip can provide the requisite reasonable suspicion for an investigatory stop." *State v. Wright*, 290 N.C. App. 465, 474, 892 S.E.2d 253, 261

(2023), *rev'd on other grounds*, 388 N.C. 225, 918 S.E.2d 623 (2025). "Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by police and its degree of reliability. While the reasonable suspicion standard is less demanding than probable cause, it still requires that an informant's tip carry some indicia of reliability." *Id.* at 474, 892 S.E.2d at 262 (cleaned up). "In evaluating whether an informant's tip sufficiently provides indicia of reliability, we consider the totality-of-the-circumstances. In weighing the reliability of an informant's tip, the court must consider the informant's veracity, reliability, and basis of knowledge." *Id.* (cleaned up). "There must also exist sufficient police corroboration of the tip before the stop is made." *State v. Sanchez*, 147 N.C. App. 619, 624, 556 S.E.2d 602, 607 (2001), *disc. review denied*, 355 N.C. 220, 560 S.E.2d 358 (2002).

In the instant case, the tip was submitted by an anonymous tipster rather than a known informant. "To create the requisite reasonable suspicion, an anonymous tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *State v. Blankenship*, 230 N.C. App. 113, 116, 748 S.E.2d 616, 619 (2013) (cleaned up). Binding precedent compels the conclusion that, in the present case, the anonymous tip that a male was walking along the side of the road while carrying a rifle was not "reliable in its assertion of illegality," *id.* (citation omitted), and was therefore insufficient, by itself, to supply Deputy Lambert with the reasonable suspicion to stop Defendant.

Nonetheless, we consider Deputy Lambert's *Terry* stop of Defendant under a

totality-of-the-circumstances standard. The trial court's order contains the following unchallenged findings of fact: In addition to the tip, when Deputy Lambert initially arrived on the scene, he saw Defendant—who matched the description given by the tipster—walking along the side of the road in the dark. Deputy Lambert believed Defendant to be "slightly impaired" and saw that Defendant was carrying "a long metal object" that "weighed approximately 30 to 45 pounds and could be used as a weapon." Defendant told Deputy Lambert that "he was looking for his 'drive staff' [sic] for his truck," which had been lost when his vehicle broke down a few days earlier. While they were speaking, "Defendant appeared to be nervous and began mumbling to himself and looking around repeatedly. . . . Defendant then made multiple statements regarding his dead grandfather and how his dead grandfather had been trying to contact him through his dreams. . . . Defendant continued to mumble." We conclude that these facts are sufficient, considering the totality of these circumstances, to establish that Deputy Lambert "possessed [the] reasonable and articulable suspicion [needed] to make an investigatory stop" of Defendant. *Robinson*, 189 N.C. App. at 460, 658 S.E.2d at 505.

### *The* Terry *Frisk*

"A *Terry* frisk generally contemplates a limited pat-down of the outer clothing of an individual." *State v. Smith*, 150 N.C. App. 317, 321, 562 S.E.2d 899, 902, *aff'd*, 356 N.C. 605, 572 S.E.2d 781 (2002). "This limited frisk may take place, if, after the detention, the investigating officer's personal observations confirm his apprehension

that criminal activity may be afoot and that the person may be armed. In such a situation, the limited frisk is a function of self-protection." *Id.* (cleaned up). "[A] protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* (cleaned up). "Ultimately, in determining whether the *Terry* standard is met, to justify a frisk for weapons, [we consider] the law enforcement officer's actions in light of the totality of the circumstances." *State v. Tripp*, 381 N.C. 617, 632, 873 S.E.2d 298, 310 (2022) (cleaned up).

Defendant has not challenged the trial court's findings of fact concerning the *Terry* frisk. The court found that: "Based on Deputy Lambert's training and experience it was not unusual for persons who are in possession of something that can be considered a weapon to have other weapons." The court also listed several reasons for Deputy Lambert's frisk of Defendant: 1) "the 911 call"; 2) "observations of . . . Defendant's possible impairment"; 3) "the statements made by . . . Defendant about his dead grandfather trying to contact him through his dreams"; 4) "Defendant's mumbling"; 5) "the location [being in] a somewhat secluded area of the county"; 6) "being the lone officer"; 7) "the concern for officer safety"; and 8) "Defendant might have [had] another weapon."

We conclude that these facts are sufficient, considering the totality of the circumstances, to create the requisite reasonable suspicion justifying the frisk of

Defendant.

In sum, the trial court's "[u]nchallenged findings of fact are presumed to be supported by competent evidence." *Johnson*, 269 N.C. App. at 79, 837 S.E.2d at 172–73. In the present case, the court's unchallenged findings of fact support its conclusions of law that "there was sufficient reasonable articulable suspicion" for both the stop and the frisk of Defendant based on the totality of the circumstances.

## III.    Conclusion

For the foregoing reasons, we conclude that the trial court did not err in denying Defendant's motion to suppress.

AFFIRMED.

Chief Judge DILLON and Judge FREEMAN concur.

Report per Rule 30(e).